[Civil No. 3009. Filed November 4, 1931.]

[4 Pac. (2d) 392.]

# J. P. LORDEN, Appellant, v. JAY H. SNELL, Appellee.

Mr. Glenn Copple and Messrs. Kibbey, Bennett, Gust, Smith & Rosenfeld, for Appellant.

Mr. W. F. Timmons, for Appellee.

ROSS, J.—This action was brought by Jay H. Snell for damages claimed by him to have been suffered through the negligent failure of defendant J. P. Lorden to keep and perform his part of the following contract:

"The memorandum of agreement, made and entered into, in duplicate, this 16th day of March, A. D. 1925, by and between J. P. Lorden, of Yuma County, Arizona, party of the first part, and Jay H. Snell, of the same place, party of the second part, Witnesseth:

"That, whereas, the party of the first part is in the control of certain real premises in Yuma County, State of Arizona, hereinafter mentioned and described, adaptable to pecan nursery; and,

"Whereas, the party of the second part is a skilled nurseryman, versed in the art of pecan culture, grafting, and like arts in the management and growth of pecan trees; and,

"Whereas, it is the desire of both of the parties hereto to enter upon the enterprise of setting out a pecan nursery, attending same to salable age, and then disposing of same;

"Now, therefore, in consideration of the premises, and of the mutual promises of the parties hereto,

made by one unto the other, the same to be done, kept, and performed, it is by the said parties agreed:

"That in the said enterprise hereinabove mentioned the party of the first part shall furnish, for the purpose of setting out a pecan nursery, certain premises, approximately 116 feet by 700 feet in area, on premises situate in Yuma County, and particularly described as follows: The W.½ of NE.¼ of Sec. 23, Twp. 9 S., R. 24 W., G&SRM, the same being about 1½ acres in area; and party of the first part shall furnish water in sufficient amount for the proper irrigation thereof from this time until the closing out of said nursery;

"The parties shall pay equally between them, share and share alike, the cost and expense of buying seed pecan nuts, and the expressage on same, in sufficient amount for the planting thereof on said plot of ground;

"Party of the first part shall pay for the unskilled labor of planting said nuts, party of the second part to superintend in person, without pay, the labor of planting; and thereafter the party of the first part shall pay all of the expense of irrigating, keeping down weeds, and otherwise cultivating the growing trees to the time that it becomes suitable to graft scions on to said trees;

"When the said nursery stock is of an age suitable for grafting, the party of the second part shall furnish good, first class pecan scions, or wood, for grafting thereto, and shall then graft all of said trees, all of the materials necessary for such work being furnished by said party of the second part; but the party of the first part shall at his own cost furnish such unskilled labor (one or two helpers) as may be necessary for the proper doing of said work, the party of the second part superintending the doing of the same; and thereafter, the party of the first part shall assume the care of said trees, to the time that same are fit and ready for sale;

"Upon the disposal of said trees, the cost and expense of digging them, wrapping, and other expenses incident to their delivery shall be paid by the parties equally; and the proceeds of all sales shall be divided equally, share and share alike, between said parties;

"The sale price shall be fixed by the mutual agreement of the parties at the time of the sale or sales of said trees; or, in the event that no agreement as to the sale price thereof is reached, the trees shall be fairly and equally divided between said parties.

"Witness the hands of said parties the day and year first hereinabove written.

"J. P. LORDEN,
"J. H. SNELL.

"This contract terminates Feb. 28, 1929.

"J. P. LORDEN.
"J. H. SNELL."

The complaint alleges that in pursuance of the terms of the contract the parties bought and planted on the premises, soon after March 16, 1925, 70,000 seed pecan nuts; that plaintiff superintended the planting and furnished the scions and all other necessary material for grafting all of those trees which attained sufficient size; that approximately eighty per cent., or 56,000, of the pecan nuts planted germinated, sprouted, and grew; that beginning from and after March, 1927, the defendant "failed and neglected to bestow proper, if any, care upon said nursery premises and upon said nursery trees, both seedlings and budded or grafted trees, and failed properly or reasonably to irrigate the same, and failed to cultivate the same, and permitted the said premises to dry out, and allowed weeds and grass, and particularly Bermuda grass to so grow and thrive in said premises and upon said plot of ground described as to grow around, strangle and choke, and dry the moisture from said trees, both seedlings and grafted and budded trees, whereby the said trees, both the seedlings and the budded and grafted trees did nearly all wither and die."

That had defendant in accordance with his agreement properly irrigated, cared for, and cultivated said nursery, a minimum of 55,000 of the seedling trees would have survived for grafting, and of those

grafted, sixty per cent., or 33,000, would have been secured and grown.

That because of defendant's failure and neglect in the respects alleged, only approximately 6,500 of the trees survived and only approximately 2,000 of those grafted were successful; that 1,200 of the grafted trees were disposed of and the proceeds divided equally between them; that during the planting and growing seasons of 1927, 1928, and 1929 there was a market in the Yuma Valley for the entire stock had it grown to marketable size; that by reason of defendant's failure to perform his part of the contract plaintiff was damaged in the sum of $8,600.

The defendant interposed as defenses (1) a general demurrer, and (2) specially demurred on the ground that the damages claimed are too uncertain and not capable of ascertainment. He admitted the execution of the contract, but denied everything else. Affirmatively alleged that the enterprise was a failure because of plaintiff's negligence and lack of skill, and asked for damages. In a cross-complaint he made the same charges and counterclaimed in damages.

The demurrers were overruled, and in a trial before a jury the plaintiff recovered a verdict for $2,000, upon which judgment was entered.

The defendant has appealed and assigned twelve errors as grounds for his appeal. Ten of them make the point that because of the nature of the contract plaintiff cannot maintain an action for damages against defendant, the other party thereto, for breaches of his promises and agreements therein contained, even though by reason thereof the enterprise or undertaking became a failure or was unsuccessful. These assignments are based on the court's order overruling the general demurrer, upon the giving of instructions recognizing liability, and in refusing instructions denying liability. Under this contention it is insisted that plaintiff and defend-

ant were joint adventurers in the enterprise of raising and grafting pecan trees and selling them to the public during the period from 1925 to January 21, 1929, and that as such joint adventurers each was the representative or agent of the other, and consequently the negligence of one was that of the other, for which no recovery of damages can be had.

The duties of joint adventurers and their liability for failure to perform are stated in 33 Corpus Juris, 851, section 35, as follows:

"One who has entered into a contract of joint adventure with another or others is bound to proceed with the enterprise until its termination. Until that time he cannot abandon it to save himself from an impending loss, or for the purpose of disrupting it and obtaining its benefits for himself; nor can he lawfully, for a like purpose, do any act which obstructs the carrying on of its business to a successful conclusion; and, if he does, he is liable to his associate or associates for the damages sustained by him or them from the breach of contract."

As we construe the contract, each of the parties thereto bound himself to do certain things. Plaintiff was to superintend the planting of the nuts, furnish all scions and materials for the grafting of the trees, and superintend the grafting; and defendant was to irrigate, care for and cultivate the sprouts until they were ready for the market.

As we understand the law, when one agrees with another, upon sufficient consideration, to do a certain thing or things, whether it be in the accomplishment of a common enterprise, such as a copartnership, or a joint adventure, or a single transaction, and fails to keep his agreement, he is liable to the other party or parties, who have fully performed, for any damages sustained by reason of such breach. "In the obligation assumed by a party to a contract is found his duty, and his failure to comply with the duty

constitutes the breach." 6 R. C. L. 1016, § 377. See, also, *Soule* v. *Weatherby,* 39 Utah 580, Ann. Cas. 1913E 75, 118 Pac. 833.

The negligence here charged is not a failure to do things growing out of the fiduciary relation of joint adventurers, but a failure to do the specific acts defendant had agreed and bound himself to do by his written contract. This distinction defendant has apparently overlooked. In a joint adventure or partnership there are indeed many things a member thereof may do in behalf of himself and his associates, and, so long as they are done in good faith and are within his express or implied powers, he will not be liable even though injury results to his concern or his associates. That is not the situation here, and authorities supporting such a rule are not applicable to the facts of this case.

The court did not err in overruling the general demurrer and holding that the defendant was liable to plaintiff in damages for the alleged breach of his contract to irrigate, care for and cultivate the young pecan sprouts and trees.

The question presented by the special demurrer to the complaint, to the effect that the claimed damages were too uncertain and incapable of ascertainment, is next to be disposed of. This assignment does not deny liability for the breach alleged, but says in effect if damages resulted to plaintiff they are too uncertain and are incapable of admeasurement. Whether, if defendant had performed his part of the contract, the enterprise would have resulted in a profit to plaintiff and the approximate amount thereof, we think, is susceptible of proof by persons familiar with the business and the demand for nursery trees during the period the business was to run. *Meer* v. *Cerati,* 53 Cal. App. 497, 200 Pac. 501. It is said in 17 Corpus Juris 788, § 113:

"As a general rule a party not in default is, in case of a breach of contract due to the fault or omission of the other party, entitled to recover profits which would have resulted to him from performance. But in order that it may be a recoverable element of damages the loss of profits must be the natural and proximate result of the breach complained of and they must be capable of ascertainment with reasonable certainty."

A case very similar in principle and facts is *Schrandt* v. *Young*, 2 Neb. (Unof.) 546, 89 N. W. 607, where, under the contract, plaintiff was entitled to one-half of the increase of a flock of sheep and one-half of the wool clip. It was there held that the plaintiff's prospective gains arising from the probable increase and the probable clip were not so uncertain as to prevent proof by experts, in an action for a breach of the contract, as to the amount and value of such increase and wool clip.

Prospective damages have been allowed for the breach of a contract under which plaintiff was to plant and cultivate an orchard and receive a share of the profits, *Shoemaker* v. *Acker,* 116 Cal. 239, 48 Pac. 62; for future crops, *McCready* v. *Bullis,* 59 Cal. App. 286, 210 Pac. 638. " . . . He who breaks the contract cannot wholly escape on account of the difficulty which his own wrong has produced of devising a perfect measure of damages." *Shoemaker* v. *Acker, supra.*

We conclude the complaint stated facts sufficient to entitle plaintiff to damages for future profits, and that the special demurrer was properly overruled.

The defendant does not complain of the rule given to the jury for the measure of damages, or of the kind and quantity of the evidence in support thereof.

The remaining assignment complains of an instruction telling the jury that, although evidence as to the character of the land and its suitability for the pecan nursery business had been introduced, they

were not to consider such evidence in arriving at their verdict, for the reason that the parties had accepted such land as shown by both the contract and the evidence. This accords with the contract and there is no suggestion in the pleadings that either party was misled as to the character or suitability of the land for nursery purposes. Its fitness for such purpose was not an issue.

The judgment is affirmed.

McALISTER, C. J., and LOCKWOOD, J., concur.